LUCERO, Circuit Judge,
concurring and dissenting.
I concur in the majority’s Section I analysis concerning the burden of proof in cases brought to remove architectural barriers under 42 U.S.C. § 12182(b)(2)(A)(iv). In particular, I agree that the approach outlined in Pascuiti v. New York Yankees, No. 98 CIV. 8186, 1999 WL 1102748 (S.D.N.Y. Dec.6, 1999), and adopted by the majority is well-reasoned. However, I dissent from the resolution of this case in Section II of the majority opinion. In my judgment, the majority demands too much of ADA Title III plaintiffs. Moreover, in simply premising its holding on a negative — that Williams presented too little evidence showing his proposal was readily achievable — the majority provides inadequate guidance to trial courts in this undeveloped area of ADA law.
I
The majority opinion does not clarify the type and quantum of evidence a plaintiff must present to show that removal of an architectural barrier is “readily achiev *1010 able” pursuant to 42 U.S.C. § 12182(b)(2)(A)(iv). As to the type of evidence, an obvious starting place is the language of the ADA itself, which defines “readily achievable” as “easily accomplish-able and able to be carried out without much difficulty or expense.” 42 U.S.C. § 12181(9).[1] A clear reading of that definition is that it requires a plaintiff to show two things related to the removal of an architectural barrier: (1) that it can be done with ease[2] and (2) that it can be done inexpensively. See Pascuiti, 1999 WL 1102748, at *4 (holding that plaintiffs must “proffer evidence ... as to the ease and inexpensiveness of their proposed method of barrier removal” to make out a prima facie case).
The first requirement addresses non-monetary qualitative issues such as feasibility, engineeringfetructural concerns, historic preservation, and so forth. These concerns will vary with the design of the building, the character of the neighborhood, local laws and regulations, and other variables. In most cases, plaintiffs should provide expert testimony presenting a plan and assuring its feasibility, keeping in mind any applicable engineering, structural, and historic preservation concerns.
The second requirement addresses quantitative, monetary issues and includes such considerations as “cost,” 42 U.S.C. § 12181(9)(A), “overall financial resources,” § 12181(9)(B), (C), and “the effect on expenses and resources,” § 12181(9)(B). Plaintiffs can satisfy their burden through the testimony of a financial expert who can relate the estimated costs of the proposal to the defendant’s financial position and ability to pay those costs.
It is the quantum of evidence — the amount of detail and precision — as to which the majority requires too much. In the vast majority of cases, there will be an information imbalance between plaintiffs and defendants. Defendants, who possess the practical experience and knowledge gained by owning and operating the building containing the architectural barrier, will have a much better sense of the true impact and feasibility of a barrier removal proposal. As a result, while plaintiffs bear the burden of advancing a reasonable plan, defendants ultimately are in a better position to produce — as part of their affirmative defense — the detailed evidence the majority apparently wishes to see in these types of cases. I find it unreasonable to require ADA Title III plaintiffs to anticipate and counter any and all potential objections as part of their prima facie ease. Placing too high a burden on ADA plain *1011 tiffs risks ignoring Congressional intent[3] and gutting the ADA’s private right of action. If plaintiffs must all but present the court with a pre-approved construction contract for a sum certain which includes detailed plans, impact statements, engineering studies, and permits to meet their threshold burden, virtually no plaintiff could afford to bring an architectural barrier removal claim under 42 U.S.C. § 12182(b) (2) (A) (iv).[4] A Plaintiffs should present some evidence as to cost and feasibility that recognizes and addresses these considerations but should not be required to have final, detailed answers as to any of them.
II
Turning to the facts of this case, I believe that Williams satisfied his burden of proffering a plan for barrier removal that is readily achievable. It is quite evident from the record that the only concern that separates this case from the “garden variety” ramping of a nine-inch entrance elevation [5] is the subject property’s inclusion on the National Register of Historic Places. As the majority discusses, Williams called expert witnesses Noré Winter, an architect and authority on historical preservation, who discussed the ramping plan, a possible design, and estimated costs, and Robert Aucone, an accountant, who testified regarding Hermanson’s financial resources. The majority faults this evidence for three reasons: (1) it included only “speculative conceptual ideas, rather than a specific design”; (2) it “failed to provide any precise cost estimates”; and (3) it “failed to present any evidence that the City of Denver would approve” the ramp. (Majority Op. at 1009.)
The majority’s criticisms of the “speculative” nature of the proposed barrier removal plan, which appear to critique Williams’s evidence addressing the qualitative prong of the “readily achievable” standard, are undermined by the fact that both Winter and Hermanson’s expert, John Salmen, approved the same approach to removing the challenged architectural barrier: warping and raising the sidewalk gradually from the curb to the entrance of *1012 the Crawford Building. At the very least, this demonstrates that the basic approach advocated by Winter was sound. That is enough, in my view, to satisfy Williams’s burden. Hermanson would have ample opportunity to demonstrate whatever flaws exist in Winter’s plan during Her-manson’s presentation of his affirmative defense.
There is no need for “precise” cost estimates in this case because there was no uncertainty surrounding Hermanson’s ability to pay for the proposed barrier removal plan. Aucone testified that “even if the actual cost of a ramp was twice as much as estimated, his opinion” that Hermanson could easily afford to install the ramp “would not change.” (Id. at 1008.) In fact, Aucone testified that Hermanson could well afford, by a factor of six, the estimated cost of Salmen’s Crawford Building proposal. Perhaps precise estimates would be necessary if the cost of the barrier removal plan were at the margin of Hermanson’s ability to pay for it, but that was not the situation. The issue is “could Hermanson easily afford to remove the barrier?” The clear answer, even assuming a six-fold error by Winter in estimating the cost of the proposal, is “yes.”
I do not believe Williams should be required to present evidence demonstrating the likelihood of approval by the City of Denver as part of his prima facie case. No reason is advanced to suspect that the City of Denver would not approve the proposed plan — the only evidence on this subject indicated that the City of Denver had approved other barrier removal projects in the Larimer Square area. We are not presented with a complicated and expensive project such as incorporating an elevator into an antiquated building, and absent such evidence or a similar reason— such as unusually large scope or novelty— we should not presume significant hurdles to planning approval. Moreover, given the character of Larimer Square, the most likely obstacle to the City of Denver’s approval of the barrier removal plan would be historic preservation concerns. However, that was exactly the area of Winter’s expertise and the area he most thoroughly addressed in his testimony.
I would hold that Williams met his burden and reverse the district court.

. The statute also lists the following factors to be considered "[i]n determining whether an action is readily achievable”:
(A) the nature and cost of the action needed under this chapter;
(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
(D)the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity-
42 U.S.C. § 12181(9)(A)-(D).

. I can see no meaningful distinction in the definition of "readily achievable” between "easily accomplishable" and "able to be carried out without much difficulty.” Could there ever be a situation in which a proposed barrier removal plan were one but not the other?

. See, e.g., H.R.Rep. No. 101-485, pt. 2, at 28 (1990) ("[TJhere exists a compelling need to establish a clear and comprehensive Federal prohibition of discrimination on the basis of disability in the area[ ] of ... public accom-modationsS.Rep. No. 101-116, at 5 (1989) (same).

. I recognize that the ADA has provisions allowing successful plaintiffs to recover attorney fees and expert witness costs. See 42 U.S.C. § 12205 (authorizing the award of “litigation expenses” to prevailing parties in ADA suits); James C. Harrington, The ADA and Section 1983: Walking Hand in Hand, 19 Rev. Litig. 435, 461-62 (2000) (quoting legislative history indicating Congress's intent to include the cost of expert witnesses as part of “litigation expenses”). Nevertheless, requiring plaintiffs to provide a highly detailed barrier removal plan would result in up-front costs that outweigh the incentives for private representation embodied in § 12205’s fee-shifting provisions. Cf. Louis S. Rulli, Employment Discrimination Litigation under the ADA from the Perspective of the Poor: Can the Promise of Title I Be Fulfilled for Low Income Workers in the Next Decade?, 9 Temp. Pol. & Civ. Rts. L.Rev. 345, 369, 378-82 (2000) (noting that suits brought under Title I of the ADA “are fact intensive, highly individualized cases that require extensive discovery and expert witnesses, and thus are expensive to litigate” and expressing doubts as to the availability of legal services to poor potential ADA plaintiffs from legal services programs, public interest organizations, or the private bar despite § 12205).

.See, e.g., 28 C.F.R. Pt. 36, App. B at 646 ("Ramping a single step ... will likely be readily achievable....”); H.R.Rep. No. 101— 485, pt. 2, at 110 (1990) ("The kind of barrier removal which is envisioned ... includes ... the simple ramping of a few steps....”); S.Rep. No. 101-116, at 66 (1989) (same).